UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE COMMISSION

Plaintiff,

VERSUS

RAMESH CHAKRAPANI,

Defendant.

No. 09 Civ. 325 (RJS)

---

SECURITIES AND EXCHANGE COMMISSION

Plaintiff,

VERSUS

NICOS ACHILLEAS STEPHANOU, *ET AL.*,

Defendants.

No. 09 Civ. 1043 (RJS)

---

OPINION & ORDER
June 28, 2010

---

RICHARD J. SULLIVAN, District Judge:

In the above-captioned, related cases, the Securities and Exchange Commission ("SEC") alleges that Defendants participated in a wide-ranging insider trading scheme. Various criminal cases have arisen out of the same alleged misconduct. On February 11, 2010, the Court heard oral argument on three motions: a motion brought by the SEC to dismiss its actions against Defendant Ramesh Chakrapani without prejudice, a motion brought by Defendant Joseph Contorinis to compel discovery, and the renewed motion of the United States Attorney's Office (the "government") for a

limited stay of discovery. For the following reasons, the SEC's motion to dismiss is granted, Contorinis's motion to compel is granted in part and denied in part, and the government's renewed motion to stay is denied.

## I. BACKGROUND

On January 13, 2009, the government filed a criminal complaint charging Chakrapani with criminal conspiracy and securities fraud related to an alleged insider trading scheme that included Contorinis, Nicos Achilleas Stephanou, Michael Koulouroudis, and others. On the same day, the SEC filed a parallel civil action, the first of the above-captioned cases, against Chakrapani based upon the same conduct. On February 5, 2009, the SEC filed a second civil complaint charging Stephanou, Chakrapani, Contorinis, Koulouroudis, and others with securities fraud and conspiracy in the second of the above-captioned civil actions. Shortly thereafter, Stephanou began cooperating with the government and SEC. The government dismissed its criminal complaint against Chakrapani without prejudice on April 24, 2009. Stephanou pled guilty to six counts of conspiracy and one count of securities fraud in a May 6, 2009 plea. On July 29, 2009, the Court denied the government's request for a stay of discovery pending the resolution of the parallel criminal action. The Court based its ruling primarily on the fact that Chakrapani was not a party to the criminal proceeding and would be prejudiced by a stay of the civil proceedings for the duration of the criminal action. The SEC requested leave to file its motion to dismiss against Chakrapani on November 9, 2009. On the next day, Koulouroudis pled guilty to one count of conspiracy to commit securities fraud and one count of securities fraud. Contorinis's criminal case remains ongoing.

The crucial fact underlying all of these motions is that Stephanou, the government's and SEC's cooperator, has pled guilty and is expected to be a witness for the government in its criminal case against Contorinis. (SEC's Br. Mot. Dismiss at 4.) Thus, the SEC asserts: "Stephanou's counsel has indicated that Stephanou plans to assert his Fifth Amendment privilege at least through the completion of the Contorinis criminal trial. On September 1, 2009, Stephanou formally asserted that privilege in response to interrogatories served on him in the civil actions by Chakrapani." (*Id.*)

## II. MOTION TO DISMISS

The SEC moves to voluntarily dismiss without prejudice all of its claims against Chakrapani under Federal Rule of Civil Procedure 41(a)(2). It purportedly does so "because the unavailability of certain witnesses substantially undermines the [SEC's] ability to successfully prosecute its claims against Chakrapani at this time." (*Id.* at 1.) Chakrapani opposes a dismissal without prejudice. For the following reasons, the SEC's motion is granted.

### A. Legal Standard

The Federal Rules of Civil Procedure provide that, once a defendant has answered, "an action may be dismissed at the plaintiff's request only by a court order, on terms that the court considers proper . . . . Unless the order states otherwise, a dismissal under this paragraph . . . is without prejudice." Fed. R. Civ. P. 41(a)(2).

Although dismissal under Rule 41(a)(2) is squarely within the Court's discretion, there is a presumption in favor of dismissing without prejudice "absent a showing that defendants will suffer substantial prejudice as a result." *A.V. by Versace, Inc. v. Gianni Versace S.p.A.*, 261 F.R.D. 29, 31 (S.D.N.Y.

2009) (internal citation omitted). In *Zagano v. Fordham University*, the Second Circuit set forth a non-exclusive list of five factors to assist a court in evaluating whether substantial prejudice would result from a dismissal without prejudice. 900 F.2d 12, 14 (2d Cir. 1990). These factors include

> [1] the plaintiff's diligence in bringing the motion; [2] any undue vexatiousness on plaintiff's part; [3] the extent to which the suit has progressed, including the defendant's effort and expense in preparation for trial; [4] the duplicative expense of relitigation; and [5] the adequacy of plaintiff's explanation for the need to dismiss.

*Id.* The Court will analyze each of these factors individually, but no one factor is dispositive. The crucial inquiry remains whether Chakrapani will suffer substantial prejudice as a result of a dismissal without prejudice.

### B. Analysis

#### 1. Diligence

The SEC has been mindful of the potential unavailability of Stephanou and perhaps other witnesses since almost the inception of these cases. In a July 9, 2009 submission responding to the government's first motion to intervene and for a stay of discovery, the SEC notified the Court that Stephanou "plans to assert his Fifth Amendment rights during discovery" and "at least through the completion of the criminal trial of Koulouroudis, and that of Contorinis, assuming the [government] pursues the case against him." (SEC's Resp. to Gov.'s Mot., Docket No. 24, at 2.) .

Nonetheless, it is puzzling that the SEC waited until November 9 to request leave to file its motion to dismiss. The SEC claims that it only realized on November 5, 2009 — the day of Contorinis's indictment — that "it [was] very likely that Stephanou [would] remain unavailable to testify for the foreseeable future." (SEC's Br. Mot. Dismiss at 7.) This explanation rings hollow in light of the fact that Stephanou was expected to testify at the criminal trial of Koulouroudis, who was indicted on April 30, 2009 and scheduled to go to trial on November 16, 2009. Indeed, prior to Koulouroudis's guilty plea on November 10, the government was prepared to produce Stephanou's statements. (*See, e.g.*, Nov. 6, 2009 letter from Sarah E. Light to the Court (describing the parties' attempt to reach an agreement regarding the production of Stephanou's statements "in light of the imminent production of 3500 material in *United States v. Koulouroudis*")). Accordingly, the Court finds that the first *Zagano* factor favors Chakrapani.

#### 2. Vexatiousness

Courts define "undue vexatiousness" to mean that the plaintiff acted with "ill-motive" in bringing or maintaining its claims. *Versace*, 261 F.R.D. at 32. "As with the diligence factor, courts find 'ill-motive' where plaintiffs have assured the court and the defendants that they intended to pursue their claims prior to seeking a dismissal." *Id.* (citations omitted). The Court has no evidence that the SEC's claims are baseless or brought with ill-motive.

Defendant Chakrapani relies heavily on *Securities & Exchange Commission v. Oakford Corp.*, in which Judge Rakoff found that the SEC had acted vexatiously in not seeking to dismiss its action against the plaintiff sooner. 181 F.R.D. 269 (S.D.N.Y. 1998). Judge Rakoff explained that the SEC "never had any intention of providing discovery in this case but nonetheless

3

permitted the case to proceed, thereby seeking the advantage of filing its charges without having to support them." *Id.* at 271. The Court finds this case to be distinguishable from *Oakford* because, here, the SEC gave no explicit assurances such as those made by the SEC to Judge Rakoff.

Furthermore, as a general matter, there can be no dispute that the government and the SEC have independent obligations to investigate and prosecute instances of insider trading. As a result, it is often the case that individuals are named in both criminal actions commenced by the government and civil actions commenced by the SEC for the same alleged misconduct. That the actions are frequently brought simultaneously or announced at the same time is hardly surprising and cannot be attributed to "ill-motive." Moreover, the fact that the criminal proceedings typically proceed ahead of the civil ones does not, at least as a general matter, support the inference that the SEC "never had any intention of providing discovery in this case" or that the SEC merely sought "the advantage of filing its charges without having to support them." *Id.* On the record before it, the Court finds no evidence of ill-motive by the SEC. Accordingly, the second *Zagano* factor favors the SEC.

### 3. Progress of the Action

"The general rule is settled . . . that a plaintiff possesses the unqualified right to dismiss his complaint . . . unless some plain legal prejudice will result to the defendant other than the mere prospect of a second litigation upon the subject matter." *Jones v. Sec. & Exch. Comm.*, 298 U.S. 1, 19 (1936). An exception exists, however, when "the cause has proceeded so far that the defendant is in a position to demand on the pleadings an opportunity to seek affirmative relief and he would be prejudiced by being remitted to a separate action." *Id.* at 20. These actions have not progressed past fact discovery, which has been stayed since October 28, 2009. Prior to the stay, no depositions had been taken, and the parties had not begun expert discovery. All of these factors are weighted in favor of granting dismissal without prejudice.[1] *See, e.g.*, *In re Fosamax Prods. Liab. Litig.*, No. 06 MDL 1789 (JFK), 2008 WL 5159778, at *4 (S.D.N.Y. Dec. 9, 2008).

### 4. Expense of Relitigation

"The mere prospect of a second litigation is insufficient to rise to the level of legal prejudice." *Versace*, 61 F.R.D. at 33 (citation omitted). The "bulk" of Chakrapani's legal expenses were incurred through "document collection, organization, and the review of nearly one million pages of documents obtained from the SEC and from the many non-parties subpoenaed by Mr. Chakrapani." (Def.'s Opp. Mot. Dismiss at 10.) Such work surely can be reused in a future criminal or civil action. Accordingly, the prospect of duplicative litigation expenses is slight. Thus, this factor also weighs in the SEC's favor.

### 5. Adequacy of Plaintiff's Explanation

The SEC asserts that it needs to dismiss these actions against Chakrapani because the

---

[1] Notably, Chakrapani's legal expenses "have exceeded $800,000," which the Court recognizes is a significant sum. (Def.'s Opp. Mot. Dismiss at 10.) Although Chakrapani does not provide a breakdown of the fees, he asserts that "they have been incurred largely since the criminal complaint against him was dismissed" on April 24, 2009. (*Id.*) As discussed below, given that Chakrapani will be able to utilize the fruits of these fees should the SEC or the government renew their actions against him, the Court finds that the relatively insubstantial progress of these actions outweighs Chakrapani's significant expenses. Thus, this third *Zagano* factor also favors the SEC.

4

unavailability of Stephanou and other relevant witnesses will deprive the SEC of its strongest evidence against Chakrapani. The Court finds that the SEC's explanation is inadequate because it is unclear whether Stephanou is actually unavailable in this action.

On May 7, 2009, Stephanou signed a cooperation agreement with the government. (Epner Aff., Ex. E.) The agreement provides that Stephanou must "cooperate fully with [the government], the Federal Bureau of Investigation, the Securities and Exchange Commission, and any other law-enforcement agency designated by [the government]." (*Id.* at 3.) Accordingly, Stephanou may not choose to make himself unavailable to the listed agencies, including the SEC, and remain in compliance with the terms of his agreement. Furthermore, on June 23, 2009, Stephanou signed a separate consent agreement with the SEC. That agreement also requires Stephanou "to appear and be interviewed by [SEC] staff at such times and places as the staff requests upon reasonable notice" and to "accept service by mail or facsimile transmission of notices or subpoenas issued by the [SEC] for documents or testimony at depositions, hearings, or trials, or in connection with any related investigation by Commission staff." (*Id.* at Ex. F at 4.)

To date, the SEC has not sought to compel Stephanou's testimony in accordance with the terms of his cooperation agreements. To the contrary, the SEC appears to have passively accepted Stephanou's selective assertion of his Fifth Amendment privilege even when it threatens to undermine the SEC's case against Chakrapani. Because the SEC has elected to dismiss these actions against Chakrapani without even attempting to explore Stephanou's availability as a witness — by at least alerting Stephanou to the consequences flowing from his breach of the cooperation agreements (*see, e.g.*, *United States v. Iqbal*, 117 Fed. Appx. 155, 158 (2d Cir. 2004)) — the Court finds the SEC's explanation for its need to dismiss to be inadequate or, at best, premature.[2] Accordingly, this factor favors Chakrapani.

\* \* \*

As explained above, three of the five *Zagano* factors favor the SEC and two favor Chakrapani. The *Zagano* factors, however, need not be weighted equally because their purpose is "to make certain that a district court, in making a determination ultimately reserved to its discretion, expressly considers those concerns identified by the Court of Appeals as inherently relevant." *Oakford*, 181 F.R.D. at 273. The Court's most significant concern is "whether the dismissal will substantially prejudice the defendant[]." *Id.* The SEC, therefore, prevails on its motion not merely because the Court has found three of the five *Zagano* factors to be in its favor. Rather, the SEC prevails because Chakrapani has failed to show that, if the Court dismisses this case without prejudice, substantial prejudice to him will result.

As the Court summarized at the November 18, 2009 conference, Chakrapani's "prejudice argument turns on whether or not [he] is employable under different scenarios." (Conf. Tr. 21:11-13, Nov. 18, 2009.) The Court explained, "if there is an ongoing criminal investigation, whether or not the civil case is dismissed with or without prejudice, it seems at least plausible that future employers are going to be skeptical or reluctant to hire [him] until the criminal investigation is over." (*Id.* at

---

[2] Naturally, the government's refusal to enforce its own agreement may be a subject for Stephanou's cross-examination at Contorinis's criminal trial.

5

21:14-18.) The Court has no evidence before it that, if this civil case were dismissed with prejudice, Chakrapani would be in a better position to gain employment. Blackstone, Chakrapani's former employer, suspended him when the parallel civil and criminal complaints were initiated. (Def.'s Opp. Mot. Dismiss at 19.) Chakrapani now submits a letter from Blackstone's chief legal officer asserting that "[i]f the SEC suit is dismissed with prejudice, *and if we can satisfy ourselves that the U.S. Attorney will not reinstate its proceedings against Mr. Chakrapani*, we want to *consider* having him at our firm." (Epner Aff., Ex. O (emphasis added).) Not only does this letter state that Blackstone will just "consider" rehiring Chakrapani, but it also makes clear that such consideration is premised on the closure of the government's investigation. The government has unambiguously stated that Chakrapani remains under investigation. (Grupe Decl. ¶ 14.) Chakrapani, therefore, has given the Court no indication that employment at Blackstone or any other job opportunity depends upon these cases being dismissed with prejudice.

For this reason, as well as the foregoing analysis of the *Zagano* factors, Chakrapani cannot meet his burden of demonstrating that substantial prejudice would ensue from a dismissal without prejudice. The Court, thus, grants the SEC's motion and dismisses all of the SEC's actions against Chakrapani without prejudice.

## II. MOTION TO COMPEL DISCOVERY

On November 23, 2009, Contorinis requested, pursuant to the *Touhy* regulations of the Department of Justice ("DOJ"), "[a]ll documents . . . related to statements made by defendant Nicos Achilleas Stephanou to any government official or entity." (Finzi Decl., Ex. C at 5.) The government refused to comply with Contorinis's request and asked Contorinis to withdraw his subpoena. (*Id.* at Ex. D.) On December 4, 2009, Contorinis filed this motion to compel discovery.

Under Rule 37(a) of the Federal Rules of Civil Procedure, "a party may move for an order compelling disclosure or discovery" from the other party. "A court should grant a Rule 37(a) motion to compel only after determining that the discovery sought is (1) relevant to any party's claim or defense, *see* Fed. R. Civ. P. 26(b)(1); (2) does not violate Rule 26(b)(2)(C), *see* Moore's Federal Practice and Procedure § 37.22[a],[d]; and (3) does not fall under [any applicable privilege], *see id.* at § 37.22[c]." *Kiobel v. Royal Dutch Petroleum Co.*, No. 02 Civ. 7618 (KMW), 2009 WL 1810104, at *5 (S.D.N.Y. June 25, 2009). In this case, the discovery Contorinis seeks is clearly relevant under Rule 26(b)(1) and does not violate Rule 26(b)(2)(C). The Court, however, must analyze whether the discovery sought falls under any applicable privilege. As explained in detail below, the SEC and the government argue that the law-enforcement and work-product privileges shield the discovery from being produced.

For the following reasons, Contorinis's motion to compel discovery is granted in part and denied in part.

### A. Law-Enforcement Privilege

The government seeks to withhold the FBI 302s and the documents listed on its October 7, 2009 privilege log on the basis of the law-enforcement privilege. (Gov.'s Opp. Mot. Compel at 5.) The privilege log includes documents such as a memorandum regarding Stephanou's cooperation agreement, notes of an Assistant United States Attorney ("AUSA") regarding impressions of the Stephanou proffer, an annotated version of the cooperation agreement, and AUSA chronologies of

6

events and analyses of proof. (Johnson Decl. Ex. A.) The SEC also asserts the law-enforcement privilege with respect to the documents listed on its privilege log of October 5, 2009. (SEC Opp. Mot. Compel at 1.) These documents consist of "emails written by staff members who attended or participated in the Stephanou Proffer Sessions (or who authored emails relaying information from such staff members) relating to those sessions." (*Id.* at 7.)

1. Legal Standard

The law-enforcement privilege affords the government a qualified privilege meant "to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witnesses and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." *United States v. Amodeo*, 44 F.3d 141, 147 (2d Cir. 1995). "[T]he party asserting the law enforcement privilege bears the burden of showing that the privilege applies to the documents in question." *In re City of New York*, No. 10 Civ. 0237, 2010 WL 2294134, at *14, (2d Cir. June 9, 2010).

2. Analysis

Neither the government nor the SEC has met its burden in establishing that the requested documents, *in their redacted form*, are protected by the law-enforcement privilege. In its brief and supporting affidavits, the government argues that releasing the documents will reveal information identifying individuals under investigation, permit individuals to craft their testimony in the parallel criminal proceeding, and allow individuals to thwart investigative efforts. (Johnson Decl. ¶¶ 21-23; Grupe Decl. ¶¶ 16-20). The SEC argues that releasing the information "could interfere with ongoing law-enforcement investigations." (Murphy Decl. ¶ 4.)

The government's and the SEC's arguments prove unpersuasive in the context of this case. Because Stephanou is a known cooperator, there is no concern about revealing his identity. As for other potential informants or cooperators, their names can be redacted out of the documents. The concern that other subjects or potential subjects of the government and SEC's ongoing investigation may flee or conceal assets is also unpersuasive. Not only can their names be redacted from the documents, but they are likely to have already recognized the implications that flow from Stephanou's very public cooperation. The SEC and government have pursued charges against a number of defendants related to the alleged insider trading scheme at the heart of this action. Thus, it seems likely that the associates of current or past defendants have heard about the defendants' legal woes and Stephanou's cooperation. If these associates wanted to flee or conceal assets, they presumably would have already done so.

Finally, the argument that releasing this information will thwart investigative efforts or Contorinis's truthful testimony is implausible. First, all information regarding government tactics and investigative strategies may be redacted from the documents.[3] Given such redactions, the assertion of the law-enforcement privilege becomes more attenuated: "the protection afforded by the law enforcement privilege is somewhat weaker . . . with respect to withholding simple interview materials, as

---

[3] At oral argument, Contorinis's counsel clearly stated that he is uninterested in the government's investigative strategies, mental impressions, or subjects of investigation other than Contorinis. (Oral Arg. Tr. 5:3-5:23, Feb. 11, 2010.)

contrasted with confidential law enforcement methods and tactics." *Wells v. Connolly*, No. 07 Civ. 01390 (BSJ) (DF), 2008 WL 4443940, at *2 (S.D.N.Y. Sept. 25, 2008). Second, Contorinis will receive Stephanou's statements in the form Jencks material, pursuant to 18 U.S.C. § 3500, prior to his criminal trial anyway. Indeed, the government was prepared to turn over such material in Koulouroudis's trial, which was scheduled before Contorinis was even indicted. The fact that Koulouroudis pled guilty before trial, thus obviating the need to turn over the § 3500 material, cannot obscure the limited prejudice that will flow from such disclosure. Thus, even assuming for the sake of argument that Contorinis would craft his testimony or falsely testify in his criminal trial, the Court does not believe that possessing the documents for a longer period of time will have a significant effect on how well he can craft or lie.

Clearly, the government's refusal to disclose these documents is motivated by tactical considerations. Namely, due to the discrepancy between the criminal and civil discovery rules, the government fears that the "premature release of these documents would . . . prematurely reveal the [government's] criminal case." (Gov.'s Opp. Mot. Compel at 14.) While that statement may in fact be true, such purely tactical concerns are not a recognized basis for withholding otherwise discoverable documents under the law-enforcement privilege. The Court, furthermore, is not particularly moved by the government's plight in this context. Surely, the government was well aware of the discrepancy between the civil and criminal discovery rules when it, along with the SEC, chose to initiate parallel proceedings against Contorinis. Before doing so, the government and SEC could have engaged in a cost-benefit analysis that weighed the benefits of simultaneously initiating civil and criminal proceedings against the cost of possibly losing the government's tactical discovery advantage in the criminal case.

In any event, the discovery advantage enjoyed by the government under Rule 16 of the Federal Rules of Criminal Procedure is not a right guaranteed or even recognized by Rule 26 of the Federal Rules of Civil Procedure. Thus, the government's assertion that "[d]iscovery in a civil proceeding may not be used to circumvent the limitations on discovery in a criminal action" is simply incorrect.[4] (*Id.* at 7.) Furthermore, as the Court stated at the July 29, 2009 conference, Contorinis is entitled to receive discovery in this civil proceeding. (Oral Arg. Tr. 26:22-25, July 29, 2009.) *See also SEC v. Saad*, 229 F.R.D. 90, 92 (S.D.N.Y. 2005) ("But the defendants are not just facing a criminal indictment; they are also facing a very serious SEC civil action, and they are thus fully entitled to the timely discovery that federal law grants them in defending such an action.")

---

[4] The government is also incorrect that *SEC v. Chestman*, 861 F.2d 49 (2d Cir. 1988), supports its claim that "courts have repeatedly emphasized that liberal civil discovery processes should not be allowed to undermine the criminal processes." (Gov.'s Opp. Mot. Compel 8.) In fact, the *Chestman* opinion states that "[t]he government had a discernible interest in *intervening* in order to prevent discovery in the civil case from being used to circumvent the more limited scope of discovery in the criminal matter." 861 F.2d at 50 (internal quotation marks omitted) (emphasis added). The quoted language explains why the government had a sound rationale to *intervene*. The opinion says nothing about the government having a right to receive a stay in civil discovery in order not to lose its advantage in criminal discovery. *See SEC v. Cioffi*, No. 08 Civ. 2457 (FB), 2008 WL 4693320, at *1 (E.D.N.Y. Oct. 23, 2008) (interpreting *Chestman* to support only the government's interest in intervening, not its interest "[w]ith respect to a stay of discovery.")

8

Accordingly, the Court rejects the government's and SEC's invocations of the law-enforcement privilege in this action.

### B. Work-Product Privilege

The government argues that the documents listed on its October 7, 2009 privilege log may also be withheld on the basis of the work-product privilege. (Gov.'s Opp. Mot. Compel at 5.) The SEC likewise asserts that the work-product privilege applies to the documents on its October 5, 2009 privilege log. (SEC Opp. Mot. Compel at 1.)

#### 1. Legal Standard

The Federal Rules of Civil Procedure establish the requirements for shielding documents under the attorney work-product privilege. The rule states that "documents . . . prepared in anticipation of litigation or for trial by or for another party or its representative" are ordinarily undiscoverable. Fed. R. Civ. P. 26(b)(3)(A). "[T]he party invoking [the] privilege bears the burden of establishing its applicability to the case at hand." *In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002*, 318 F.3d. 379, 384 (2d Cir. 2003). Although both facts and opinions may be protected by the work-product privilege, the moving party's burden becomes more difficult when seeking to assert the privilege over facts, rather than opinions. *See In re Grand Jury Subpoena Dated Oct. 22, 2001*, 282 F.3d 156, 161 (2d Cir. 2002).

Moreover, the work-product privilege is a qualified privilege. Thus, privileged documents may still be discoverable if they are "otherwise discoverable" under Rule 26(b)(1) *and* the opposing party "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A). If the opposing party makes such a showing and the Court orders production, then the Court "must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B).

#### 2. Analysis

The documents on the government's and SEC's privilege logs were obviously prepared in anticipation of litigation. All of the materials were created in relation to the dual investigations of the alleged insider trading scheme, and thus all qualify as work product within the meaning of Rule 26(b)(3)(A). Contorinis does not argue otherwise.

Contorinis does argue, however, that his need for the documents should overcome the government's and SEC's work-product privileges. The Court disagrees. The documents listed on the SEC's privilege log are all emails between SEC staff members regarding their investigation into the alleged insider trading scheme involving Contorinis. These emails contain the mental impressions, conclusions, opinions, or legal theories of SEC attorneys and staff. The documents listed on the government's privilege log are also mostly internal government documents that likewise contain the mental impressions, conclusions, opinions, or legal theories of AUSAs. In *Upjohn Co. v. United States*, the Supreme Court indicated that opinion work product "cannot be disclosed simply on a showing of substantial need and inability to obtain the equivalent without undue hardship." 449 U.S. 383, 401 (1981). If these documents were discoverable, therefore, all opinion work product would have to be redacted

9

from them. The Court finds that, with respect to the documents in their redacted form, Contorinis can "without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3). Specifically, he will have the FBI 302s, which are akin to the primary source of the information that he seeks. The documents on the SEC's and government's privilege logs are akin to secondary sources — replete with mental impressions, conclusions, opinions, and legal theories — for which Contorinis has no substantial interest.

Accordingly, the Court agrees with the government and SEC that the work-product privilege applies.

### C.  *Touhy* Request

"The Federal Housekeeping Statute, 5 U.S.C. § 301, authorizes government agencies . . . to adopt regulations regarding the custody, use, and preservation of [agency] records, papers, and property. *U.S. Envtl. Prot. Agency v. Gen. Elec. Co.*, 197 F.3d 592, 595 (2d Cir. 1999) (internal quotation marks omitted). In *United States ex rel. Touhy v. Ragen*, the Supreme Court affirmed that agency employees must refuse to provide subpoenaed agency records when their production would violate the agency's housekeeping regulations. 340 U.S. 462 (1951). Agencies, therefore, refer to such requests as "*Touhy* requests."

On November 23, 2009, Contorinis made a *Touhy* request on the DOJ for "[a]ll documents . . . related to statements made by . . . Stephanou to any government official or entity." (Finzi Decl., Ex. C.) The DOJ's internal regulations, which are codified in 28 C.F.R. § 16.21 *et seq.*, require that the DOJ determine the nature of the information requested and then evaluate whether to grant the request based upon the type of requested information. *See* 28 C.F.R. § 16.26. In other words, the statute gives the government varying degrees of discretion to grant or deny such requests depending on the type of information involved. In this case, the government denied Contorinis's *Touhy* request and withheld (1) the FBI 302s on the basis of law-enforcement privilege and (2) the documents listed on the government's privilege log on the basis of the law-enforcement and work-product privileges. (Gov.'s Opp. Mot. Compel at 5.) The Court has already found that the work-product privilege shields the documents listed on the SEC and government's privilege logs from production, so the Court will only review the government's denial of Contorinis's *Touhy* request with respect to the FBI 302s.

The Second Circuit has not yet articulated the correct standard of review for a denial of a *Touhy* request. *See U.S. Envtl. Prot. Agency v. Gen. Elec. Co.*, 212 F.3d 689, 690 (2d Cir. 2000). Contorinis argues that the government's denial of his *Touhy* request should be reviewed under Federal Rules of Civil Procedure 26(b)(2) and 45(c)(3), which require the Court to ask whether it would be an undue burden for the government to produce the requested documents. *See, e.g.*, *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774 (9th Cir. 1994); *Lidner v. Calero-Portocarrero*, 251 F.3d 178 (D.C. Cir. 2001). The government argues that Section 706 of the Administrative Procedure Act ("APA") should apply. That statute requires the Court to uphold an agency's decision unless it is arbitrary and capricious. *See, e.g.*, *COMSAT Corp. v. Nat. Sci. Found.*, 190 F.3d 269, 277 (4th Cir. 1999); *Moore v. Armour Pharm. Co.*, 927 F.2d 1194, 1197 (11th Cir. 1991).

Because the Court would reach the same result under either standard, it is unnecessary to decide which standard of

review is applicable.  For the sake of its analysis, the Court will review the DOJ's denial of the request for the FBI 302s using the APA's more deferential "arbitrary and capricious" standard.  Section 706 dictates that "[t]he reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  "The scope of review under this provision of the APA is a narrow one.  In reviewing the agency's explanation of its actions, we must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment."  *City of N.Y. v. Shalala* 34 F.3d 1161, 1167 (2d Cir. 1994) (citations omitted).

Despite the deference the standard gives to the government, the Court finds that the government's decision not to produce the FBI 302s is unsupported by the law-enforcement privilege and is arbitrary and capricious.  The government was prepared to produce the requested FBI 302s as § 3500 material in the Koulouroudis trial and had agreed to produce copies to the civil defendants in this case shortly thereafter.  It was only when Koulouroudis's guilty plea eliminated the need to produce the § 3500 material that the government reasserted its refusal to produce the FBI 302s.  Naturally, this chronology raises the question: Why could the government safely produce the documents to Koulouroudis and not to Contorinis?  To date, the government has provided no satisfactory answer.  Furthermore, Stephanou is a known informant and Contorinis has consented to the redaction of sensitive information that might implicate any interests of the law-enforcement privilege.  Thus, the Court finds no credible reason why the government cannot produce these documents in their redacted form.  As stated above, the government's invocation of the law-enforcement privilege seems like a pretext to preserve the government's tactical advantage in its criminal trial against Contorinis.  The government's interest in preserving its tactical advantage, while understandable, does not outweigh Contorinis's interest in obtaining evidence — perhaps the most important evidence against him — which he is entitled to receive in this civil proceeding under the Federal Rules of Civil Procedure.  The Court, therefore, finds that the government's denial of Contorinis's *Touhy* request as to the FBI 302s was arbitrary and capricious.  Accordingly, Contorinis's motion to compel discovery, with respect to the FBI 302s, is granted.

### III. MOTION TO STAY DISCOVERY

On July 2, 2009, the government filed motions in both of the above-captioned actions seeking to stay all discovery directed at Stephanou and all discovery directed at determining the investigative strategies of the DOJ.  On July 29, 2009, the Court denied the request principally because Chakrapani was not a party to the criminal proceeding and would be disadvantaged by a stay in the civil action.  Given the SEC's dismissal of its action against Chakrapani, the government now renews its motion for a stay of discovery "regarding Nicos Stephanou's statements until such time as documents are produced in *United States v. Contorinis*." (Gov. Opp. Mot. Compel at 1.)

When considering whether to grant a stay, courts balance five factors: "(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil

11

litigation; and (5) the public interest." *Volmar Distributors, Inc. v. N.Y. Post Co.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993). Prejudice to the parties is by far the most important of the five factors. *Id.*

The first two factors — essentially, prejudice to the parties — clearly favor proceeding with discovery. Contorinis obviously wants to proceed with discovery because he filed a motion to compel discovery, and the SEC has not joined the government's motion to stay discovery. (Oral Arg. Tr. 22:1-3, Feb. 11, 2010 ("Your Honor, the Department of Justice has moved for the stay; that's not something that we have moved for.").) The third factor — the interest of the courts — likewise supports expeditious discovery in the civil action. *See, e.g.*, *Travelers Cas. & Sur. Co. v. Vanderbilt Group, LLC*, No. 01 Civ. 7927 (DLC), 2002 WL 844345, at *4 (S.D.N.Y. May 2, 2002) ("[T]he Court's interest in the expeditious resolution of cases before it weighs against granting a stay.")

The government's motion to stay discovery principally relies on the same privilege arguments made in response to Contorinis's motion to compel. In essence, the government asserts that its interest in preserving its cooperating witness for the criminal trial is synonymous with factors four and five: the interests of persons not parties to the civil litigation and the public interest. However, as discussed above, the Court finds the government's privilege arguments to be largely unpersuasive. The Court reiterates that it is unaware of any legal requirement entitling the government to preserve its cooperators from examination before trial. What the government deems to be a right is, in fact, a litigator's preference to avoid cross-examination and related impeachment of prized witnesses. At oral argument, in fact, the government acknowledged, "it's no secret we would rather have [Stephanou] not subjected to extensive cross-examination in advance of the criminal trial." (Oral Arg. Tr. 66:17-19, Feb. 11, 2010.) The reality, however, is that prized witnesses often must testify more than once in both civil and criminal proceedings. The government's cooperation agreement with Stephanou contemplated exactly this situation. The fact that criminal trials typically precede civil trials does not elevate the preservation of a cooperator's testimony into a government right.

Moreover, if Stephanou is to adhere to his cooperation agreement and earn his sentencing reduction, one would expect his testimony to be the same whether first given at a criminal trial or at a civil one. Where, as here, there is minimal fear that his testimony will compromise the integrity of government investigations or the safety of others, there is little to justify the government's jealous protection of its cooperating witness.

In short, the Court finds that the government has failed to demonstrate that a stay of discovery is warranted in this case. Of course, if Contorinis or other relevant witnesses invoke their Fifth Amendment privileges not to participate in civil discovery, the Court's analysis regarding the propriety of a discovery stay might well be altered. In other words, the Court, the public, and non-parties — namely, alleged victims of the insider trading scheme — have a clear interest in open and full discovery in this matter. To the extent that process is compromised by the legitimate invocation of constitutional privileges during discovery, the balance of interests could turn in favor of a discovery stay pending completion of Contorinis's criminal trial, which is currently scheduled to begin on September 20, 2010 before this Court. *See, e.g., Saad*, 229 F.R.D. at 91 (granting a stay because of the "high likelihood that

invocations of the Fifth Amendment privilege [would] play havoc with the orderly conduct of . . . depositions."). Because Contorinis and other relevant witnesses have not yet invoked their Fifth Amendment privileges in connection with discovery,[5] the Court declines to speculate on the merit of potential stay applications.[6]

Accordingly, the Court denies the government's motion for a stay of discovery.

## IV. CONCLUSION

For the foregoing reasons, the SEC's motion to voluntarily dismiss its actions against Chakrapani without prejudice is granted; Contorinis's motion to compel discovery is granted in part and denied in part; and the government's motion to stay discovery is denied.

Accordingly, the government shall produce all documents attached to Peter Grupe's Declaration of October 7, 2009 and any FBI 302s that have been finalized since October 7, 2009. The parties are directed to confer and then submit to the Court a proposed protective order regarding the production and use of these documents. Before producing the documents to Contorinis, however, the government shall highlight all parts of the documents it deems, pursuant to this opinion, to be appropriately redacted and then shall send the documents to chambers within two weeks of the date of this opinion. After the Court approves the proposed redactions and protective order, the government shall produce the documents in their redacted form to Contorinis. *See In re City of New York*, 2010 WL, at *19 ("If the district court determines that the law enforcement privilege does not protect the documents at issue, the documents must be disclosed. In an effort to minimize the effects of disclosure, however, the district court may order that the documents be 'revealed only in a specified way.'") (quoting Fed. R. Civ. P. 26(c)(1)(G)).

The Clerk of the Court is directed to terminate the motions located at docket numbers 101 and 103 in 09 Civ. 1043 and docket number 58 in 09 Civ. 325. Additionally, the Clerk of the Court shall mark Ramesh Chakrapani as a terminated Defendant in 09 Civ. 1043 and mark 09 Civ. 325 as closed.

SO ORDERED.

RICHARD J. SULLIVAN
United States District Judge

Dated: June 28, 2010
       New York, New York

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/29/10

---

[5] The Court is aware that Contorinis has already invoked his Fifth Amendment privilege in his answer to the SEC's complaint. (Docket No. 66.)

[6] In the event of such changed circumstances, the Court notes that there is no need for the government to intervene, yet again, to vindicate interests that the SEC is fully capable of representing on its own.